# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **WERNER MICHAEL FISK,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:04-CV-2643-H (BH)** |
| | ) | **ECF** |
| **NATHANIEL QUARTERMAN,[1] Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Institutional Division,** | ) | |
| **Respondent.** | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge.  The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

### A.  Nature of the Case

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction for aggravated robbery in Cause No. F02-01870-P.  Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

---

[1] On June 1, 2006, Nathaniel Quarterman became Director of TDCJ-ID.  The Court therefore substitutes him for the original respondent Doug Dretke.

B. <u>Procedural and Factual History</u>

On April 3, 2002, the State indicted petitioner for aggravated robbery with a deadly weapon. S.H. Tr.[2] at 124 (indictment).  On March 26, 2003, petitioner entered an open plea of guilty to the charge and true to enhancement paragraphs listed in the indictment.  *Id.* at 26 (judgment).  The court sentenced him to twenty-five years imprisonment.  *Id.*

Although petitioner did not appeal his conviction, (*see* Pet. Writ of Habeas Corpus (Pet.) at 2), he did file a state application for writ of habeas corpus and a purported amended state application for writ of habeas corpus with the trial court on March 25, 2004, *see* S.H. Tr. at  2-10 (original state writ), 33 (showing purported amended application).  The original application raised four grounds for relief:  (1) involuntary plea because defense counsel told petitioner that he would receive probation; (2) ineffective assistance of counsel in advising petitioner to plead guilty on erroneous advice that he could and would receive probation; (3) denial of right to appeal; and (4) "medical reports were not filed or submitted in writing within reasonable time to allow defense to review and discuss."  *See id.* at 7-8 (original state application), 18-19 (mem. in support of state writ).  The purported amended state application contains the same four grounds for relief, but also attaches additional pages related to grounds 1, 2, and 4, and adds a fifth ground of ineffective assistance of counsel that is crossed out.  *See id.* at 38 (showing identical first and second grounds); 39-42 (additional pages related to ground one); 62-68 (additional pages related to ground two); 78 (showing identical third and fourth grounds with new fifth ground crossed out); 79-81 (additional pages related to ground four).

---

[2] "S.H. Tr." denotes the primary state habeas records submitted with respect to petitioner's conviction.  Respondent also provided supplemental state habeas records that the Court will identify as "S.H. Tr. Supp."

On September 8, 2004, the state trial court issued findings of fact and recommendation regarding petitioner's state habeas application. *See* S.H. Tr. Supp. at 2-7. The court characterized petitioner's claims as asserting that his attorney rendered ineffective assistance by (a) advising him to plead guilty and informing him that the judge would grant him probation without adequately advising him of the consequences of pleading guilty to the indictment with an enhancement; (b) failing to communicate with him until the day he pled guilty when he advised him that he would receive probation; (c) changing strategy several times; (d) communicating with his mother rather than with petitioner; and (e) "[r]esults of the medical evaluations were not available to allow [petitioner] to review them prior to the plea."[3] *Id.* at 2-3. Despite that initial characterization, the trial court also recognized that petitioner claimed he involuntarily pled guilty and waived his right to appeal. *See id.* at 4. The court recommended that the state application be denied because it was "totally without merit." *See id.* at 6.

In rejecting the involuntary plea claim, the court cited to Texas case law for the proposition that the court had discretion to place him on deferred adjudication probation if the court deemed such sentence appropriate. *Id.* at 4. The court also noted that, "[t]o the extent that [the] attorney was wrong in predicting that the judge would give him probation . . . the prediction did not rise to the level of a promise or guarantee," and that "[e]rroneous predictions concerning the consequences of a plea do not constitute ineffective assistance of counsel." *Id.*

On the issue of involuntary waiver of appeal, the court noted that petitioner provided no facts or basis for the claim that he involuntarily waived his right to appeal, and that the record

---

[3] The trial court does not explain how Claim E should be attributed to a deficiency of counsel.

suggested part of his decision to waive his appellate rights was made in exchange for the prosecutor's decision to waive the State's right to a jury trial. *Id.*

With respect to claim related to unavailable results of medical evaluations, the court found that an oral report of the petitioner's competency to stand trial was timely provided to it prior to the petitioner's plea and sentencing, and that "the record is devoid of any suggestion that the reports were not considered." *Id.* at 5. The court also found that failure to timely file a written report did not harm the petitioner because the petitioner did not point to additional facts in the written report that would be considered material. *Id.*

With respect to petitioner's ineffective assistance claims, the court considered an affidavit provided by petitioner's attorney, Kevin Kurtz, and found it "credible and worthy of belief." *Id.* Kurtz averred that petitioner's ability to assist him with the case "was limited initially because he had not seen a psychologist or get [sic] on psychotropic medication", but after treatment by Dr. William Flynn, petitioner "responded to such a point that [the attorney] felt we could go forward with his case." *Id.* at 8. Kurtz further averred that he explained the pros and cons of an open plea, that petitioner understood such explanation, and "knew that there was no guarantee that the Judge would send him to T.D.C.J. rehab and then continue him on probation." *Id.* at 8-9. Kurtz also averred that that Dr. Flynn had advised him that petitioner was competent and understood what was happening. *Id.* at 8. The court specifically adopted the factual statements in the affidavit as findings of the Court. *Id.* at 5. The court found no ineffective assistance of counsel. *Id.*

On November 17, 2004, the Court of Criminal Appeals denied petitioner's state application for writ of habeas corpus without written order on findings of the trial court without a hearing. *Ex parte Fisk*, No. 59,049-01, slip op. at 1 (Tex. Crim. App. Nov. 17, 2004).

-4-

Petitioner, through retained counsel, filed the instant federal writ of habeas corpus and a supporting memorandum on December 14, 2004. (Pet. at 1; Mem. Supp. at 1.) Respondent filed an answer on February 18, 2005. (*See* Answer at 1.)

**C.  Substantive Issues**

Petitioner raises four claims in the instant federal petition: (1) involuntary guilty plea induced by erroneous information that petitioner should receive deferred adjudication probation and drug treatment; (2) ineffective assistance of trial counsel stemming from the advice to plead guilty and statement that he should receive probation and treatment; (3) denial of the right to appeal caused by his attorney telling him he would receive deferred adjudication probation; and (4) medical reports not filed in a timely manner. (Pet. at 7-8; Mem. Supp. at 5-12.)

**D.  Exhaustion**

Petitioner raised each of these claims in his state writ. *See* S.H. Tr. at 7-8. Respondent concedes that petitioner has sufficiently exhausted his state remedies with respect to these claims, except to the extent that a "constitutional complaint" may "be gleaned from" Claim 4. (Answer at 2.) With respect to Claim 4, respondent argues that petitioner has not alleged a constitutional violation and therefore has not raised a cognizable claim for federal habeas review. (*Id.* at 7.) The respondent further argues that if petitioner were to later raise a constitutional basis for his complaint, it would be unexhausted because he did not assert a constitutional basis for the claim in his state habeas petition. (*Id.*)

A petitioner must fully exhaust state remedies before seeking federal habeas relief, unless "there is an absence of available State corrective process; or . . . circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). To exhaust in

accordance with § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In Texas, a prisoner must present his claim to the Court of Criminal Appeals in a petition for discretionary review or an application for writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432.

In this case, petitioner's pleadings on the issue of mental competency are materially the same in both his state and federal petitions for habeas corpus. *Compare* S.H. Tr. at 8 *with* (Pet. at 8). The Court of Criminal Appeals denied petitioner's state writ and thus adjudicated the claims raised therein on the merits. *See Ex parte Fisk*, No. 59,049-01, slip op. at 1 (Tex. Crim. App. Nov. 17, 2004). Petitioner has thus exhausted his state remedies with respect to Claim 4.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-
> ceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unrea-
>> sonable application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, the denial of petitioner's state writ constitutes an adjudication on the merits. *See Ex parte Thomas*, 953 S.W.2d 286, 288-89 (Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits). The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'un-

reasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

With these AEDPA standards in mind, the Court proceeds to address petitioner's various claims.

## III.  VOLUNTARINESS OF PLEA

Petitioner argues that his plea was involuntary because he believed he had an agreed sentence for deferred adjudication probation and drug treatment, also called substance abuse felony punishment ("SAFP"). (Mem. Supp. at 6.) The trial court sentenced petitioner to twenty-five years imprisonment instead of deferred adjudication probation.

## A.  <u>Legal Principles Related to Guilty Plea</u>

A plea of guilty waives a number of constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). Thus, the Fourteenth Amendment Due Process Clause imposes certain requirements to ensure the validity of a guilty plea. *Fischer v. Wainwright*, 584 F.2d 691, 692 (5th Cir. 1978) (citing *Brady v. United States*, 397 U.S. 742 (1970); *Boykin*, 395 U.S. 238; *Johnson v. Zerbst*, 304 U.S. 458 (1938)). "*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the

-8-

decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000).  In addition, "the voluntary and intelligent nature of the plea [must] be apparent on the face of the record." *See Holloway v. Lynaugh*, 838 F.2d 792, 793 (5th Cir. 1988). *Boykin* also sets out "the contemporary standards for plea bargain admonishments."[4]  *See United States v. Barlow*, 17 F.3d 85, 89 (5th Cir. 1994).

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748).  "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749).  Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  A plea qualifies as intelligent when the criminal defendant enters it after receiving "'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  "Before the trial court may accept a guilty plea, the court must ensure that the defendant 'has a full understanding of what the plea connotes and of its consequence.'" *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991) (quoting *Boykin*, 395 U.S. at 244).  "A guilty plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976)).  In determining whether a plea

---

[4] Fed. R. Crim. P. 11(c) "codifies" the *Boykin* admonishments.  *See* Fed. R. Crim. P. 11(c) advisory committee's note on 1974 amendments.

is voluntary and intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor*, 933 F.2d at 329.

A prisoner may not generally "collaterally attack a voluntary and intelligent" plea. *Id.* "A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary and intelligent." *James*, 56 F.3d at 666. A guilty plea "entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *See Brady*, 397 U.S. at 755. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981) (per curiam). "When considering challenges to guilty plea proceedings, [the courts] have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."[5] *United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). The consequences of a guilty plea means only that the defendant knows

---

[5] The core concerns recognized by the Fifth Circuit Court of Appeals are addressed by the admonishments contained in Article 26.13 of the Texas Code of Criminal Procedure. The Fifth Circuit has held that the admonishments under Rule 11 of the Federal Rules of Criminal Procedure provide "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627 (5th Cir. 1993). The requirements of Rule 11 and Article 26.13 are substantially similar. *Compare* Fed. R. Crim. P. 11 *with* TEX. CODE CRIM. PROC. ANN. art. 26.13. It therefore follows that the same "prophylactic protections" attach to the admonishments under Article 26.13 as under Rule 11.

"the maximum prison term and fine for the offense charged." *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (internal quotations omitted).

Under these principles of law, the Court thus considers whether petitioner's plea was voluntarily and intelligently made.

## B.  Voluntariness of Guilty Plea

In this case, petitioner appeared before the trial judge and pled guilty to aggravated robbery with a deadly weapon on March 26, 2003. S.H. Tr. at 26. He also pled true to the enhancement paragraphs in the indictment. *Id.*

Petitioner's state writ raised the issue of the voluntariness of his plea, and petitioner argued that petitioner subjectively believed that there was a specific agreement for a deferred adjudication sentence. *Id.* at 7. He also argued that his guilty plea was involuntary because his trial counsel advised him that he could receive deferred adjudication, which the petitioner argued was impossible due to his previous record. *See id.* at 18, 38, 40-41. In rejecting this claim, the trial court specifically addressed the impossibility argument and cited Texas state cases for the proposition that the courts have the discretion and authority to defer adjudication when such sentence is deemed appropriate. S.H. Tr. Supp. at  4. Petitioner now argues that the trial court failed to address the "crux" of his involuntary plea argument, *i.e.*, "that he believed there was an agreement that he would receive deferred adjudication and SAFP." (Mem. Supp. at 6.)

By recommending that petitioner's state application be denied in its entirety, the trial court at least implicitly found that petitioner voluntarily pled guilty and understood that there was no agreement for a deferred adjudication sentence. *See* S.H. Tr. Supp. at 4-6. The court specifically acknowledged petitioner's argument that his plea was involuntary while noting that the court had

the discretion to sentence him to deferred adjudication if such sentence was deemed appropriate. *Id.* at 4. As already mentioned, the court accepted an affidavit of counsel and found the attorney credible. The attorney specifically averred that petitioner "knew that there was no guarantee" of probation. *Id.* at 9. By accepting the factual statements in counsel's affidavit, the trial court implicitly rejected petitioner's argument that he subjectively believed there was a specific agreement for deferred adjudication probation. This Court presumes the credibility and other findings of fact of the trial court to be correct, unless petitioner presents clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (holding that "[t]he presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact").

The record supports the court's implicit finding that petitioner knowingly and voluntarily entered a plea of guilty. On March 26, 2003, petitioner entered into a plea agreement. S.H. Tr. at 21-22. The plea agreement included a section entitled "Court's Admonitions to Defendant", which informed petitioner that he was charged with the offense of enhanced aggravated robbery – a felony offense that carried a sentence of twenty-five to ninety-nine years imprisonment and an optional fine not to exceed $10,000. *Id.* at 22. In a section of the plea agreement titled "Defendant's Statements and Waivers", petitioner admitted and judicially confessed to the crime of aggravated robbery as it was alleged in the charging instrument, and further admitted that his plea and judicial confession were "freely and voluntarily made, and not influenced by any consideration of fear, persuasion, or delusive hope of pardon or parole." *Id.* at 21. The waiver section also indicated that the petitioner understood that he had a right to appeal, and that he "expressly, voluntarily, knowingly and intel-

ligently" gave up and waived his right to any appeal.  *Id.*  Additionally, the plea agreement stated that petitioner pled true to the second and third enhancement paragraphs contained in the indictment, and judicially confessed that he was the same person who was previously convicted of the offenses alleged there.  *Id.*

The petitioner signed the section of the plea agreement titled "Signatures and Acknowledgements," which stated that he had read and understood the foregoing admonitions and warnings concerning his rights and plea, that they had been explained to him by his attorney, and that his statements and waivers were knowingly, freely, and voluntarily made with full understanding of the consequences.  *Id.* at 21.

Before the court accepted his plea, the court questioned petitioner under oath regarding the consequences of his plea:

> The Court: Now, the effect of a finding of true to those allegations in the second and third paragraphs of the indictment is that it increases the range of punishment to a minimum of 25 years to 99 years or life confinement in the Institutional Division of the Texas Department of Criminal Justice.  Do you understand that that is the range of punishment upon a finding of true to those allegations?
>
> Defendant: Yes, I do.
>
> The Court: Now, Mr. Fisk, it appears from the documents filed with the court that you intend to enter a plea of guilty to the indictment, the offense of aggravated robbery, alleging the offense of aggravated robbery, and that you intend to enter a plea of true to the allegations in the second and third paragraphs of the indictment, alleging the prior felony convictions, and go what we call open to the court on the issue of punishment.  *In other words, you do not have a plea bargain agreement.*  You understand that if you plead guilty to this indictment and plead true to these enhancement paragraphs in the indictment, that it will be up to me to decide your punishment somewhere within the range provided by law.  Do you understand that?
>
> Defendant: Yes, ma'am, I do.

| | |
|---|---|
| The Court: | Now, do you understand, and it's written on here, that you'll be asking for what is called a deferred probation and be asking to be placed in the SAFPF [sic] Special Needs Unit as a condition of that probation.  You understand that the court may or may not do that? |
| Defendant: | Yes, ma'am. |
| The Court: | Has anyone promised you I would do that? |
| Defendant: | No. |
| The Court: | You understand that. . . I could find you guilty on your plea, if entered, to this offense of aggravated robbery, and I could find you guilty on your plea, find the two enhancement paragraphs to be true and assess your punishment anywhere from 25 years to 99 years or life in the penitentiary? |
| Defendant: | Yes ma'am. |
| The Court: | Has anyone promised you a particular sentence in the penitentiary? |
| Defendant: | No. |
| The Court: | You – again, you understand that would be entirely up to me, if that's what I determined was appropriate, – |
| Defendant: | Yes, ma'am. |
| The Court: | – within the range of punishment provided by law, which I've explained to you. . . . |

S.H. Tr. at  57-58 (pages 12 and 13 of Vol. 1 of Rep.'s R.) (emphasis added).

Petitioner's signed plea agreement and statements in open court indicate that he understood the consequences of his guilty plea, and that it was within the trial court's discretion to determine his sentence.  Petitioner has not overcome the presumption of verity accorded solemn declarations made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (holding that "[s]olemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the

face of the record are wholly incredible"). Nor has the petitioner overcome the presumption accorded to official court documents. *See Hobbs v. Blackburn,* 752 F.2d 1079, 1081-1082 (5th Cir. 1985) (official documents, including signed plea agreement, "are entitled to a presumption of regularity and are accorded great evidentiary weight"). Although the petitioner argues that he subjectively believed he had a deal for deferred adjudication, such argument is unsupported by the record and contradicts his statements in open court that he understood that there was no plea bargain and that the judge had the discretion to sentence him within the range of punishment provided by the law. *See* S.H. Tr. at 57-58. Such suggestion also contradicts his signed waivers and judicial confession that he made his waivers "voluntarily, knowingly, and intelligently." *Id.* at 21-22. Petitioner has presented no clear and convincing evidence to rebut the state court's implicit finding that his plea was entered knowingly and voluntarily. *See* 28 U.S.C. § 2254(e)(1). Unless petitioner's specific claims of ineffective assistance of counsel impacted his decision to plead guilty, this Court should find that petitioner voluntarily pled guilty to charge against him.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner specifically alleges that his trial attorney rendered ineffective assistance by advising him that he had met with the judge and prosecutor assigned to his case who had agreed to give him deferred adjudication and SAFP. Petitioner claims that this erroneous advice induced him to plead guilty and waive his trial rights. (Mem. Supp. at 7).

Guilty pleas are "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-771 (1970)). "Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so

that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972). Once

a criminal defendant enters a knowing, intelligent, and voluntary guilty plea, however, all non-juris-

dictional defects in the proceedings below are waived except for claims of ineffective assistance of

counsel relating to the voluntariness of the plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir.

2000); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Smith v. Estelle*, 711 F.2d 677, 682 (5th

Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact
> guilty of the offense with which he is charged, he may not thereafter raise independ-
> ent claims relating to the deprivation of constitutional rights that occurred prior to
> the entry of the guilty plea. He may only attack the voluntary and intelligent char-
> acter of the guilty plea by showing that the advice he received from counsel was not
> within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

In this instance the alleged deficiencies of counsel raised by petitioner are specifically related

to the voluntariness of his plea, and thus survive any waiver under *Glinsey*. To successfully state a

claim of ineffective assistance of counsel under existing precedent of the United States Supreme

Court, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the

deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The *Strickland* test applies when a petitioner alleges he was denied effective assistance of counsel in

the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "[I]n a guilty plea scenario,

a petitioner must prove not only that his attorney actually erred, but also that he would not have

pled guilty but for the error." *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

A failure to establish either prong of the *Strickland* test requires a finding that counsel's per-

formance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in

any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).  To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

When a prisoner challenges his plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 58.  To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.*  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.

In this case, the trial court secured an affidavit from trial counsel before considering the state writ.  *See* S.H. Tr. Supp. at 5, 8-9.  The affidavit directly contradicts petitioner's contention that his attorney advised him to plead guilty based upon an agreement for deferred adjudication probation. Counsel averred that, although petitioner had given a written statement confirming that he had committed the crime, he continued to discuss proceeding to trial because the District Attorney "indicated that was the way she was inclined."  *Id.* at 8.  Counsel further averred that, on the day of the trial,

> [w]e met in chambers and the D.A. agreed to waive states [sic] right to a jury and would not object to going open to the court on punishment.  The Judge advised on the record she would consider the entire range of punishment including a drug treatment program that incorporates a mental illness aspect of long term treatment.

*Id.* With respect to the advice he gave petitioner concerning the plea agreement, counsel averred that he explained the pros and cons of an open plea and that petitioner understood the explanation and further understood "that there was no guarantee the Judge would send him to T.D.C.J. rehab and then continue him on probation." *Id.* at 8-9.

The court found that any prediction made by trial counsel as to what sentence petitioner might receive was not a promise or guarantee, and therefore did not amount to ineffective assistance of counsel. *Id.* at 4. As already discussed, furthermore, the state court found counsel "credible and worthy of belief." *Id.* at 5. Such credibility finding is presumed correct unless petitioner rebuts it with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Petitioner argues that there is rebuttal evidence suggesting that counsel informed him of a specific agreement for deferred adjudication and drug treatment because the plea agreement he signed is "confusing and contradictory." (Mem. Supp. at 11.) Although the plea agreement has both types of plea checked, *i.e.*, "open plea" and "plea bargain", the agreement contains no other suggestion that there was any plea bargain for a set sentence. *See* S.H. Tr. at 21-22. The agreement specifically states that the plea was open as to deferred adjudication and SAFP. *Id.* at 22. Conversely, the area used to outline a specifically agreed upon sentence was left blank. *See id.* Viewing the entirety of the plea agreement supports the trial court's finding that counsel properly informed petitioner of his open plea and that counsel's statements were credible and worthy of belief. As previously set out, moreover, the trial court specifically informed petitioner that his plea was open and what that meant. Petitioner has shown no clear and convincing evidence that overcomes the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). This Court thus defers to the trial court's

credibility finding, and based upon the attorney's affidavit, finds no deficiency of counsel which rendered petitioner's plea involuntary.

In light of this finding and the findings in the prior section, the Court finds that petitioner voluntarily and intelligently pled guilty to the charge against him.

## V.  WAIVER OF RIGHT TO APPEAL

Petitioner argues that he would not have waived his right to appeal had he not believed that he was entering an agreement for deferred adjudication and drug treatment. (Mem. Supp. at 12.) Petitioner further argues that "all of the arguments and authorities in the previous points apply equally here." *Id.*

The right to an appeal is a statutory right, not a constitutional right. *Abney v. United States*, 431 U.S. 651, 656 (1977).  A defendant may waive his statutory right to an appeal as part of a valid plea agreement if the waiver is knowing and voluntary. *United States v. Robinson*, 187 F.3d 516, 517 (5th Cir.1999); *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir.1992).

In the instant case, the Court has found that petitioner voluntarily and knowingly pled guilty. As part of that voluntary plea, petitioner waived his right to appeal.  This claim entitles petitioner to no federal habeas relief.  The plea colloquy establishes that petitioner knew that he was not guaranteed or promised deferred adjudication and drug treatment.

## VI.  MENTAL COMPETENCY EVALUATION

Petitioner argues that the mental competency evaluation taken the day of his guilty plea was not filed in time to allow petitioner and his trial counsel to review and refute the competency findings.  (Mem. Supp. at 12.)  Respondent argues that petitioner has failed to state a basis for federal habeas relief because he does not state a constitutional basis for this claim.  (Answer at 7.)

Petitioner indeed does not connect this claim to any violation of the Constitution or laws of the United States. The claim is thus not cognizable under 28 U.S.C. § 2254. Federal habeas relief cannot be had "absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). The courts entertain federal petitions under § 2254 "only on the ground" that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). Without an alleged violation of federal law or the United States Constitution, this claim entitles petitioner to no federal habeas relief.

When a party is represented by counsel, the Court does not liberally construe the pleadings. In this case, however, although petitioner does not clearly state a constitutional violation, his claim is reasonably construed as an alleged violation of the Fourteenth Amendment right to due process in that he was not provided with a copy of his competency report so that he could refute the findings contained therein. Were the Court to construe the claim in that manner, despite the failure to affirmatively present it in that context, the claim would still entitle petitioner to no federal habeas relief.

Under the AEDPA, federal courts cannot grant relief unless the state court proceedings (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). Petitioner has pointed to no established Supreme Court precedent that requires the state court to provide him with a copy of his mental competency examination before ruling on the issue of competency. He has not shown that the denial of his state habeas application is contrary

to or an unreasonable application of clearly established Supreme Court precedent.  He has also not shown that the denial resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  In fact, the record reveals that the State examiner, Dr. Pittman, filed both oral and written reports with the trial court that declared petitioner competent to stand trial.  *See* S.H. Tr. at  105-106 (written report), S.H. Tr. Supp. at 5 (findings of trial court recognizing oral report).  Therefore, under the AEDPA standards, petitioner is entitled to no habeas relief on the claim that he was not provided with a copy of the report declaring him mentally competent prior to pleading guilty.[6]

## VII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VIII.  RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 19th day of May, 2007.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[6]  To the extent petitioner seeks to raise a claim of ineffective assistance of counsel related to the untimely submission of Dr. Pittman's written report, the Court finds no prejudice to petitioner from any deficiency of counsel.  In the absence of prejudice, a claim of ineffective assistance of counsel entitles petitioner to no federal habeas relief.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE